# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| BROADCAST MUSIC, INC., et al.,<br><br>  Plaintiffs<br><br>v.<br><br>FIVE STAR ENTERPRISES, LLC, et al.,<br><br>  Defendants | Case No.: 2:16-cv-02361-APG-CWH<br><br>**Order Granting in Part the Plaintiffs'<br>Motion for Summary Judgment**<br><br>[ECF No. 37] |

Plaintiffs Broadcast Music, Inc. (BMI) and other copyright owners sued defendants Five-Star Restaurants LLC (FSR), Five Star Enterprises LLC (FSE), and six associated individuals for copyright infringement occurring in Zeffirino, a restaurant allegedly owned and operated by the defendants.  The plaintiffs allege that copyrighted works for which BMI owns the licensing rights were performed publicly in Zeffirino without license in 2014 and 2015.  The plaintiffs contend that despite numerous notices and other communications advising the defendants of the copyright infringement, the defendants continued to perform copyrighted songs without authorization.  The complaint asserts ten counts of infringement, each count associated with a different song performed on particular dates at Zeffirino. ECF Nos. 1; 1-5.

The plaintiffs move for summary judgment, asserting no genuine dispute remains that the defendants engaged in copyright violations for each of the ten counts in the complaint.  They contend defendants FSR and FSE are liable because they own and operate Zeffirino.  The plaintiffs argue the individual defendants are vicariously liable as the managing members of FSR and FSE because they had a financial stake in Zeffirino and had the ability to put an end to the copyright infringement.  The plaintiffs request injunctive relief, statutory damages, attorney's fees, and costs.

The defendants respond that the plaintiffs have not shown they owned the copyrights at issue at the time of the alleged infringement. The defendants also contend there is no evidence the Zeffirino piano player was not authorized to perform the songs. As to vicarious liability, they contend there is no evidence of a direct financial benefit any particular defendant received from the piano player's conduct or what each defendant did to supervise or control that conduct. FSE and its managing members, Gennaro Scotto, Ida Scotto, and Victor Scotto, argue that FSE ceased operating in 2005 and thus cannot be liable for infringement that occurred in 2014 and 2015. The defendants concede that FSR ran Zeffirino but argue that issues remain as to whether FSR's managing members, David Williamson, Antonio Crimani, and Vincent Scotto, were the moving force behind the infringement.

The parties are familiar with the facts and I will not repeat them here except where necessary. I grant the motion in part.

## II. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531

(9th Cir. 2000). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

"To establish a prima facie case of copyright infringement, a plaintiff must demonstrate (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1153-54 (9th Cir. 2012) (quotation omitted). Copying means infringing "any of the copyright owner's [six] exclusive rights, one of which is the right to perform the copyrighted work publicly." *Id.* (quotation omitted); *see also* 17 U.S.C. § 106(4) (reserving to owners of copyrights in musical works the exclusive right "to perform the copyrighted work publicly").

The parties agree that the ownership and copying elements can be sub-divided into five elements the plaintiffs must prove to establish infringement:

    1. Originality and authorship of the copyrighted works involved;
    2. Compliance with the formalities of the Copyright Act;
    3. Proprietary rights in the copyrighted works involved;
    4. Public performance of the compositions involved; and
    5. Lack of authorization for public performance.

*Broad. Music, Inc. v. Blueberry Hill Family Restaurants, Inc.*, 899 F. Supp. 474, 478 (D. Nev. 1995); *see also* ECF Nos. 37 at 8; 60 at 4-5. The defendants concede the first two elements. ECF No. 60 at 6.

**A. Rights in the Works**

To show the plaintiffs' rights in the works, BMI presents the declaration of BMI attorney Revi-Ruth Enriquez-Cohen and licensing agreements between BMI and the copyright owners. The defendants contend the attached exhibits are illegible and do not clearly show what entities owned rights to the ten songs in question during the relevant time period.

Enriquez-Cohen states that she is familiar with BMI's structure and operation and with the facts and circumstances in this case. ECF No. 37-1 at 2. She explains BMI is a nonprofit performing rights organization that enters into license agreements with copyright owners, such as songwriters and music publishers, to acquire non-exclusive public performance rights. *Id.* BMI then grants licenses to others, such as bars and nightclubs, to publicly perform the copyrighted works. *Id.* BMI distributes its income (after deducting operating expenses and reserves) to its affiliated songwriters and music publishers. *Id.* at 3.

The other plaintiffs in this action are some of those affiliated songwriters and music publishers. *Id.* As part of the licensing agreement, they grant BMI the right to sue for infringement. *Id.* Attached to and authenticated by Enriquez-Cohen's declaration are documents showing registered copyrights for each of the ten songs, along with documents showing that during 2014 and 2015, BMI was granted a performance license and the right to sue for infringement for each of the ten songs. ECF Nos. 37-2 through 37-12. Although the defendants contend the documents are illegible, they are readable.

The plaintiffs have presented evidence that they own or have a license to enforce infringement of the works at issue. The defendants present no evidence raising a genuine dispute as to any of the ten songs. The defendants "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). They have not done so, so the plaintiffs are entitled to summary judgment on this element.

**B. Public Performance**

To show public performance, the plaintiffs present reports prepared by two investigators, Robert Allman and Judy Phelps, who went to Zeffirino on the alleged dates of infringement and

heard the songs being performed. Allman visited Zeffirino on March 26, 2014, during which he listened to the music and also made a recording of it. ECF No. 37-14. Phelps visited Zeffirino on July 17 and 18, 2015, during which she likewise listened to and recorded the music. ECF Nos. 37-15; 37-16. Allman and Phelps submitted the recordings to BMI, who conducted a digital review to identify any other licensed works that were performed. ECF No. 37-13 at 4-6. That review identified additional infringing performances that Allman and Phelps did not personally identify. *Id.* at 5-6. This type of evidence satisfies the plaintiffs' burden of showing a public performance. *See Range Rd. Music, Inc.*, 668 F.3d at 1153.

In their opposition, the defendants state this element "probably" has been established. ECF No. 60 at 6. The defendants' apparent concession of this element is puzzling given that they also file a declaration in which defendant Williamson avers that after receiving "notification in May 2014 of a specific allegation of infringement the use of a piano player stopped." ECF No. 63 at 4. That statement calls into question Phelps' infringement reports for July 17 and 18, 2015, because Phelps claims a piano player performed copyrighted works on both nights. ECF Nos. 37-15; 37-16. Consequently, a genuine dispute remains as to whether there were infringing performances by the piano player on July 17 and 18, 2015. The plaintiffs are entitled to summary judgment on this element as to the March 26, 2014 performances, but not as to the July 17 and 18, 2015 performances.

**C. Lack of Authorization**

According to Brian Mullaney, Vice President of Sales and Licensing for BMI, BMI has not licensed anyone to perform the works at Zeffirino. ECF No. 37-13 at 7. He also asserts, on information and belief, the copyright owners have not done so either. *Id.* The defendants respond that there is no evidence that the piano players who performed at Zeffirino lacked

authorization, and if the piano players did not directly infringe, then the defendants did not vicariously infringe by allowing the piano players to perform in the restaurant.

The plaintiffs have presented evidence that no one was licensed to perform the works at Zeffirino and the defendants have not presented any evidence in response. By merely speculating that maybe the piano players had a license, without any evidence in support, the defendants have done nothing more than raise a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. The plaintiffs therefore are entitled to summary judgment on this element.

### D. Who is Liable

The plaintiffs contend FSR and FSE are liable because they own and operate Zeffirino. The plaintiffs argue all of the individual defendants are also liable because they are managing members of FSR and FSE who had a financial interest in the restaurant and could have stopped the infringing activity.

The defendants respond that FSE was dissolved in 2005 and so could not be responsible for infringing acts in 2014 and 2015. They further contend that because the claims against Gennaro Scotto, Ida Scotto, and Victor Scotto are based solely on their status as members of FSE, they also cannot be liable. FSR admits it owned and operated Zeffirino during the relevant period. But defendants David Williamson, Vincent Scotto, and Antonio Crimani contend they are not liable individually because the plaintiffs have shown nothing more than that they were members of FSR. They contend the plaintiffs have not shown that any of them had the authority to direct and control Zeffirino.

"To impose vicarious liability on a defendant for copyright infringement, 'a plaintiff must establish that the defendant exercises the requisite control over the direct infringer and that the

defendant derives a direct financial benefit from the direct infringement.'" *Range Rd. Music, Inc.*, 668 F.3d at 1155 (quoting *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 729 (9th Cir. 2007)). A defendant may derive a financial benefit "where the availability of infringing material acts as a draw for customers." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001), *as amended* (Apr. 3, 2001) (quotation omitted); *see also Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263 (9th Cir. 1996) (stating a financial benefit may be found "where infringing performances enhance the attractiveness of the venue to potential customers").

A defendant "exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Perfect 10, Inc.*, 487 F.3d at 730; *see also A&M Records, Inc.*, 239 F.3d at 1023 ("The ability to block infringers' access to a particular environment for any reason whatsoever is evidence of the right and ability to supervise."). This may be shown through evidence of ownership and "managerial authority . . ., including the power to hire and fire employees and the power to prevent acts from appearing at" Zeffirino. *Range Road Music, Inc.*, 668 F.3d at 1155.

### 1. FSR

FSR admits that during the relevant time, it owned and operated Zeffirino, had a direct financial interest in Zeffirino, and had the right to direct and control Zeffirino. ECF Nos. 37-20 at 4; 37-21 at 4-6. It therefore is vicariously liable for the infringement.

### 2. David Williamson, Vincent Scotto, and Antoni Crimani

In support of its motion, BMI presents evidence that Williamson, Vincent Scotto, and Crimani admit they were members of FSR and had a direct financial interest in Zeffirino during the relevant time period. ECF Nos. 37-22 at 3; 37-23 at 3; 37-25 at 3-5. Documents filed with the Nevada Secretary of State list all three as a "manager or managing member." ECF No. 37-28.

Williamson and Vincent Scotto admit they were managing members of FSR. ECF No. 37-23 at 3.ECF No. 37-24 at 3. Crimani stated in his answers to interrogatories that he was a member of FSR with no managerial duties. ECF No. 37-22 at 3. In response to requests for admissions, Crimani denied that he was a managing member of FSR, and he denied that he operated or maintained Zeffirino, had the right and ability to control Zeffirino, or had the right and ability to supervise Zeffirino employees. ECF No. 37-25 at 2-5. There is no evidence about FSR's articles of organization, operating agreement (or if one even exists), or day-to-day activities at Zeffirino that would show what rights and authority any of the three members had or exercised.

The plaintiffs appear to argue that status as one of several members or managing members of FSR subjects each of these defendants to vicarious liability. They have not cited any case that supports that proposition. All of the cases they cite involve a sole shareholder or manager—and thus there was no question of control or authority—along with additional facts that showed the individual exercised actual control, such as the ability to supervise employees and set the policy regarding music in the establishment.[1] Cases with a single owner are not

---

[1] *See Blueberry Hill Family Restaurants, Inc.*, 899 F. Supp. at 480-81 (individual had "final say" as to all operational matters, including power to employ managers and to control primary infringer); *Chi-Boy Music v. Towne Tavern, Inc.*, 779 F. Supp. 527, 530 (N.D. Ala. 1991) (individual was sole stockholder and was "actively involved" in the business, including hiring managers, arranging for the lease, and doing "whatever was necessary to run the business"); *Sailor Music v. Mai Kai of Concord, Inc.*, 640 F. Supp. 629, 633 (D.N.H. 1986) (individual was sole shareholder, "dominant influence in the corporation," and "developed the policy" for providing live music); *Warner Bros. v. Lobster Pot, Inc.*, 582 F. Supp. 478, 482-83 (N.D. Ohio 1984) (individual was sole owner who had the "final say" in all matters, including hiring and firing employees and setting music policy); *Boz Scaggs Music v. KND Corp.*, 491 F. Supp. 908, 913-14 (D. Conn. 1980) (individual was the general manager with "pretty much complete control" over day-to-day activities and operations of the station). Other cases the plaintiffs did not cite are similar. *See also Broad. Music, Inc. v. Meadowlake, Ltd.*, 754 F.3d 353, 354 (6th Cir. 2014) (individual owned 95% of the restaurant and was the "ultimate decisionmaker" with "the right and ability to supervise the infringing performances"); *MOB Music Pub. v. Zanzibar on the Waterfront, LLC*, 698 F. Supp. 2d 197, 200 (D.D.C. 2010) (individual was the managing member of the limited liability company who managed the

8

analogous to the situation here involving a three-member limited liability company (LLC). And the plaintiffs present no evidence of who was actually exercising control over Zeffirino's operations.

More directly on point with the facts presented in the plaintiffs' motion is a case out of this district, *EMI Apr. Music, Inc. v. Keshmiri*. No. 2:10-cv-00381-KJD, 2012 WL 5986423 (D. Nev. Nov. 28, 2012). There, two brothers were the managing members of an LLC that owned and operated an adult cabaret at which dancers performed to music that allegedly infringed on the plaintiff's copyrights. *Id.* at *1. Both brothers derived a financial benefit from the cabaret, but only one of them managed the business. *Id.* In determining whether the brothers were vicariously liable for infringements at the club, the court ruled the brother who actively managed the club was liable because he had "the ability to exercise managerial authority over the establishment, hire and fire employees, and prevent performers from appearing at the establishment." *Id.* at *5. But the court ruled issues of fact remained as to whether the other brother exercised the requisite control to be held liable because he asserted that he had "handed over all operations responsibilities to his brother." *Id.* Thus, the mere fact that he was identified as a managing member of the LLC did not warrant finding as a matter of law that he was vicariously liable.

This holding is consistent with Nevada law on LLCs (which the plaintiffs do not cite).[2] Under Nevada law, an LLC may be member-managed or manager-managed, and the members may arrange their rights and obligations through the articles of organization and an operating

---

establishment, "including obtaining insurance, making bank deposits, signing checks, hiring and firing employees, marketing and promoting the restaurant, entering into licensing agreements for the restaurant, and handling all legal matters—including lawsuits.").

[2] FSR is a Nevada LLC. ECF Nos. 1 at 3; 9 at 2.

9

agreement. Nev. Rev. Stat. §§ 86.161, 86.286, 86.291. The LLC may also create different classes of members or managers, and "define their relative rights, powers and duties . . . ." *Id.* § 86.296. In other words, merely being identified as a managing member of an LLC does not necessarily mean that person has the right and ability to control what happens at a restaurant owned by the LLC.

The plaintiffs have not presented evidence, such as FSR's articles of organization or operating agreement (if there is one), to show the individuals' rights and authority as members of FSR. And by the plaintiffs' own evidence, there are disputes about who had managerial authority because Crimani denies he had any despite being identified as a managing member. Finally, the plaintiffs present no evidence of who among the three actually engaged in managerial acts at the restaurant. Consequently, the plaintiffs have not met their burden of showing they are entitled to judgment as a matter of law against FSR's members. I therefore deny the motion as to these defendants.

### 3. FSE, Gennaro Scotto, Ida Scotto, and Victor Scotto

A genuine dispute remains as to whether FSE, Gennaro Scotto, Ida Scotto, and Victor Scotto are liable. When asked what entity was responsible for operating Zeffirino, every defendant that answered that questioned stated it was FSR, not FSE. *See* ECF Nos. 37-20 through 37-24. FSE dissolved in 2005 and ceased to exist in 2007. ECF No. 37-29. FSE denies it has a financial interest in Zeffirino. *Id.*

The only evidence the plaintiffs rely on is the fact that in May 2014, FSE was listed on Zeffirino's liquor license. ECF No. 37-30. However, that does nothing to establish FSE or its members' liability for the alleged infringements in 2015. Moreover, it does nothing more than raise doubt about the infringement in 2014. It does not establish, as a matter of law, that these

defendants had a direct financial interest in Zeffirino or had the right and practical ability to control what occurred at the restaurant. I therefore deny the plaintiffs' motion for summary judgment as to these defendants.

### E. Relief

Because issues of fact remain as to some infringing acts and the liability of nearly all of the defendants, fashioning relief is premature. I therefore defer ruling on the requested relief until a final resolution as to all claims and defendants. Additionally, I note that two of the plaintiffs' forms of requested relief raise questions that are not resolved by the briefing. First, the plaintiffs request injunctive relief. But Zeffirino is no longer in business and there is no evidence that the defendants are likely to infringe in the future at some other location. Second, the request for attorney's fees does not comply with Local Rule 54-14. Any future request for relief should address these issues.

## II. CONCLUSION

IT IS THEREFORE ORDERED that the plaintiffs' motion for summary judgment **(ECF No. 37) is GRANTED** in part as set forth in this order.

DATED this 19th day of September, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE